IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KIRQ JOHNSON ,**<br>           **Plaintiff,**<br><br>           v.<br><br>**SOUTHEASTERN PENNSYLVANIA**<br>**TRANSPORTATION AUTHORITY**<br>**(SEPTA), AND NATIONAL RAILROAD**<br>**PASSENGER CORPORATION**<br>**(AMTRAK)**<br>           **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  16-3599** |

## MEMORANDUM OPINION

This case arises from injuries Plaintiff Kirq Johnson sustained when a crowd of disembarking passengers pushed him onto train tracks at 30th Street Station in Philadelphia. The Plaintiff brings this action against SEPTA and AMTRAK pursuant to 42 U.S.C. § 1983 under a state-created danger theory, and state tort law.

Before the Court is SEPTA's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 14).  For the reasons that follow, SEPTA's motion is granted.[1]

I.     **FACTUAL BACKGROUND**

The facts alleged in the Amended Complaint are summarized as follows. Plaintiff Johnson is legally blind. Amended Complaint ¶ 2. On July 4, 2014, at approximately 9:00 pm, Plaintiff arrived at the AMTRAK train station in Wilmington, Delaware, intending to travel to Philadelphia via SEPTA's regional rail service. *Id*. ¶ 21. Plaintiff and other passengers waited for approximately one hour at the Wilmington train station before being invited to board an

---

[1] No motion has been made to dismiss Plaintiff's claims against AMTRAK under state tort law and 42 U.S.C. § 1983. Accordingly, Counts II and IV of Plaintiff's Amended Complaint remain. Additionally, AMTRAK asserts cross-claims against SEPTA in its Answer to Plaintiff's Amended Complaint (ECF No. 15). No motion has been made to dismiss AMTRAK's cross-claims, which, accordingly, remain.

AMTRAK train bound for Philadelphia, rather than the SEPTA train the passengers had intended to board. *Id*. ¶ 22. The train's departure from Wilmington was delayed by approximately four hours, during which time Plaintiff and the other passengers remained on the train. *Id*. ¶ 24. Upon arrival at 30th Street Station in Philadelphia, Plaintiff and the other passengers were not permitted to disembark from the train for approximately half an hour. *Id*. ¶ 25. Once the train doors were opened, a large crowd of passengers rushed onto the narrow and unsupervised platform. *Id*. ¶ 26. Plaintiff disembarked. *Id*. ¶ 27. Because 30th Street Station offers no designated waiting area for passengers with physical disabilities, he waited on the train platform for his sister, who had arranged to escort him from the station. *Id*. at ¶ 27-28. As Plaintiff waited for his sister, the large crowd of passengers who had disembarked from the train pushed him off the platform and onto the train tracks, causing him serious physical injuries. *Id*. at ¶ 32-34.

## II.     LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In light of *Twombly,* 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct].'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 177 (3d Cir.2010) (quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008)).

## III.    DISCUSSION

### A. State-Created Danger

Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals. *See DeShaney v. Winnebago County Dep't of*

*Soc. Servs.,* 489 U.S. 189, 198-200 (1989); *see also Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). However, an exception to the rule exists where "the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Sanford v. Stiles,* 456 F.3d 298, 304 (3d Cir. 2006) (per curiam) (emphasis in original) (citing *Kneipp*, 95 F.3d at 1205). To prevail on a state-created danger claim, the Plaintiff must prove the following four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;
(2) a state actor acted with a degree of culpability that shocks the conscience;
(3) the plaintiff was a foreseeable victim, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions; and
(4) a state actor affirmatively used his or her authority in a way that created a danger to the plaintiff or that rendered him more vulnerable to danger than had the state not acted at all.

*Sanford,* 456 F.3d at 304-05 (citing *Bright v. Westmoreland Cnty.,* 443 F.3d 276, 281 (3d Cir. 2006)).

Here, Plaintiff contends, in Count III of his Amended Complaint, that SEPTA willfully disregarded Plaintiff's safety by failing to properly train and dispatch its police force to assist disabled passengers, and by failing to ensure crowd control at the train station. Amended Complaint ¶ 53-63. Plaintiff alleges that SEPTA's omissions under these circumstances represent a state-created danger. *Id*. ¶ 53-63.

An evaluation of Plaintiff's allegations show they are insufficient to meet the fourth prong of the state-created danger test and therefore fail to state a claim. *See Phillips v. County of Allegheny,* 515 F.3d 224, 235 (3d Cir. 2008) (holding that the failure to satisfy any one of the elements requires dismissal of the claim).

1. <u>Defendant SEPTA Did Not Commit an Affirmative Act</u>

To satisfy the fourth prong of the state-created danger test, the Plaintiff must show that:

(1) the state actor exercised his or her authority;
(2) the state actor took an affirmative action; and
(3) the act either created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all.

*Ye v. United States*, 484 F.3d 634, 638-43 (3d Cir. 2007) (citing *Bright,* 443 F.3d at 281-82).

"[I]t is misuse of authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282. *See also Crockett v. Southeastern Pennsylvania Transp. Auth.*, 591 F. App'x 65, 67 (3d Cir. 2015) (holding, in a state-created danger claim against SEPTA for failure to fix a mechanical defect it had known about for over two decades, that "forgoing daily inspections, passive inertia, resulting in nothing being done, falls short of an affirmative act in the traditional sense") (internal quotation marks omitted).

Here, Plaintiff fails to allege that SEPTA took any affirmative act to place him in danger. Plaintiff alleges that SEPTA "willfully disregarded [his] safety by failing to properly train and dispatch its police force"; "[failed] to train and dispatch its police force or otherwise monitor crowds with video surveillance"; "failed to follow [its] policies" "with respect to how its employees should handle situations where the size of a crowd threatens the safety and wellbeing of disabled passengers"; and, "by institutional custom, takes no action to assist disabled passengers . . . when the size of a crowd threatens their safety." Amended Complaint ¶ 55-63. These are not affirmative acts for the purpose of state-created danger claim, and they fail to satisfy the fourth prong of the test. Therefore, Plaintiff does not allege facts sufficient to plausibly state a claim for relief under Section 1983 on a state-created danger theory.

B. <u>State Tort Law</u>

Count I of Plaintiff's Amended Complaint alleges state law negligence claims against SEPTA. Amended Complaint ¶ 35-43. SEPTA raises the defense of sovereign immunity.

Pennsylvania and its officials and employees acting within the scope of their employment enjoy sovereign immunity from suits under state law unless that immunity is specifically waived. 1 Pa.C.S.A. § 2310; 42 Pa.C.S. § 8521(b). Under Pennsylvania law, Defendant SEPTA is a Commonwealth agency entitled to sovereign immunity. *Toombs v. Manning*, 835 F.2d 453 (3d Cir. 1987); *Jones v. Southeastern Pa. Transp. Auth.*, 565 Pa. 211, 772 A.2d 435 (2001).

      a.  <u>The Motor Vehicle Exception to the Sovereign Immunity Act Does Not Apply</u>

The scope of Pennsylvania's waiver of its sovereign immunity is set out in 42 Pa.C.S. § 8522 (the "Sovereign Immunity Act" or "the Act"). That statute sets out nine exceptions to sovereign immunity, of which only one – the motor vehicle exception – is arguably at issue here.[2] The motor vehicle exception waives sovereign immunity for damages caused by "[t]he operation of any motor vehicle in the possession or control of a Commonwealth party." *Id*. § 8522(b)(1).

Because the scope of the Commonwealth's waiver is a question of state law, this Court is required to "apply existing state law as interpreted by the state's highest court." *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996). The Pennsylvania Supreme Court has addressed the scope of the motor vehicle exception in several decisions, and has consistently held that the exception for the "operation" of a motor vehicle pertains only to actions taken while the vehicle is in motion – not the loading and unloading of passengers. *Love v. City of Philadelphia*, 543 A.2d 531, 533 (Pa. 1988) (holding that a vehicle is only in

---

[2] Plaintiff's Response in Opposition to Defendant SEPTA's Motion to Dismiss (ECF No. 18) ("Plaintiff's Opposition") indicates that Plaintiff is not seeking relief under the real estate exception in the Pennsylvania Sovereign Immunity Act, 42 Pa.C.S. § 8522.

"operation" when it is "put in motion" and that "[m]erely preparing to operate a vehicle or acts taken at the cessation of operating a vehicle are *not* the same as actually operating that vehicle.") (emphasis in original); *White v. School District of Philadelphia*, 718 A.2d 778 (Pa. 1998) (holding that the exception did not apply to a claim by a child injured when he exited a school bus and was waved across by a driver's hand signal into the path of oncoming traffic because the hand signal was not part of the "operation" of the vehicle).

Plaintiff recognizes that the Pennsylvania Supreme Court has limited the motor vehicle exception to actions taken while the vehicle is in motion, and that the exception does not apply to the loading and unloading of passengers. Plaintiff's Response in Opposition to Defendant SEPTA's Motion to Dismiss ("Plaintiff's Opposition") at 13.[3] Plaintiff instead asks that this Court adopt the Third Circuit's interpretation of the motor vehicle exception as articulated in *Toombs v. Manning*, 835 F.2d 453, 468 (3d Cir. 1987), which would cover the "ingress to and egress from SEPTA's vehicles." *Toombs*, 835 F.2d at 468.

The Third Circuit issued its opinion in *Toombs* before the Pennsylvania Supreme Court had an opportunity to address the scope of the motor vehicle exception in the state Sovereign Immunity Act. In *Toombs*, the Third Circuit noted that it "face[d] the difficult task of predicting how the Pennsylvania Supreme Court would view the applicability of the Pennsylvania sovereign immunity statute to SEPTA." *Toombs*, 835 F.2d at 457. As Plaintiff himself observes (Plaintiff's Opposition at 14), and as discussed *supra*, the Pennsylvania Supreme Court has since diverged from the *Toombs* Court's interpretation of the motor vehicle exception. *See Love*, 543 A.2d 531; *White*, 718 A.2d 778.

---

[3] As Plaintiff's Opposition is not paginated, the Court will refer to the pages therein by referencing the ECF page number.

This Court is bound by the Pennsylvania Supreme Court's interpretation of Pennsylvania law. *Koppers*, 98 F.3d at 1445. Thus, the motor vehicle exception to the Sovereign Immunity Act pertains only to actions taken while the vehicle is in motion – not the unloading of passengers after the vehicle has come to a stop at the end of its planned route. In this case, Plaintiff himself states that he was "injured while attempting a safe egress from a vehicle . . . ." Plaintiff's Opposition at 14. He does not allege that his injuries were caused by the motion of any part of the train. Rather, he had disembarked from the train and was standing on the platform when he was pushed by a crowd of disembarking passengers. Therefore, Plaintiff's injuries were not the result of the "operation" of a motor vehicle and the statutory exception to sovereign immunity is not applicable.

Nor is it clear that the train was a motor vehicle "in the possession or control of a Commonwealth party," as required by the motor vehicle exception to the Sovereign Immunity Act. 42 Pa.C.S. § 8522(b)(1). Although the Plaintiff intended to board a SEPTA train, the train that ultimately transported him to Philadelphia was operated by AMTRAK. Amended Complaint ¶ 22. Plaintiff argues that the exception applies because the AMTRAK train was sent by SEPTA to pick up SEPTA passengers on a SEPTA route. Plaintiff's Response at 14. However, because Plaintiff has failed to establish that he was injured while the train was in "operation," his state tort law claim cannot succeed. As a result, we need not determine whether the train was a motor vehicle "in the possession or control of a Commonwealth party" as required by § 8522(b)(1).

Accordingly, the Plaintiff's state tort law claim against SEPTA must be dismissed on sovereign immunity grounds.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint does not allege facts sufficient to plausibly state a claim for relief against SEPTA under Section 1983 on a state-created danger theory or state tort law. Therefore, SEPTA's Motion to Dismiss Plaintiff's Amended Complaint will be **GRANTED**.

An appropriate Order follows.

Dated: **October 25, 2016**

           **BY THE COURT:**

           **/S/WENDY BEETLESTONE, J.**

           _____

           **WENDY BEETLESTONE, J.**